KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Michael J. Kump (SBN 100983)
  mkump@kwikalaw.com
Jonathan Steinsapir (SBN 226281)
  jsteinsapir@kwikalaw.com
Katherine T. Kleindienst (SBN 274423)
  kkleindienst@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendant and
Counterclaimant Kretek International, Inc.
and Defendant Mark Cassar

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SPARK INDUSTRIES, LLC, a California limited liability company, | Case No. 2:14-cv-05726 |
| Plaintiff, | **DEFENDANTS' ANSWER TO THE FIRST AMENDED COMPLAINT; AND DEFENDANT KRETEK INTERNATIONAL, INC.'S COUNTERCLAIMS FOR:** |
| vs. | |
| KRETEK INTERNATIONAL, INC., a California corporation; MARK CASSAR, an individual, DOES 1 through 10, inclusive; and XYZ Corporations and LLCs 1 through 10 inclusive, | **(1) DECLARATORY RELIEF;** <br> **(2) CONVERSION;** <br> **(3) BREACH OF FIDUCIARY DUTIES;** <br> **(4) DISSOLUTION OF PARTNERSHIP;** |
| Defendants. | **(5) ACCOUNTING;** <br> **(6) BREACH OF CONTRACT; and** |
| KRETEK INTERNATIONAL, INC., a California corporation, | **(7) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.** |
| Counterclaimant, | |
| vs. | **DEMAND FOR JURY TRIAL** |
| SPARK INDUSTRIES, LLC, a California limited liability company, ROES 1-10, inclusive, | |
| Counterdefendants. | |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

10932.00003/223009

For its Answer to the First Amended Complaint filed by Plaintiff and Counterdefendant Spark Industries, Inc. ("Spark"), Defendant and Counterclaimant Kretek International, Inc. ("Kretek") and Defendant Mark Cassar allege as follows:

1.     Responding to Paragraph 1 of the First Amended Complaint, Defendants deny the allegations.

2.     Responding to Paragraph 2 of the First Amended Complaint, Defendants deny the allegations.

3.     Responding to Paragraph 3 of the First Amended Complaint, Defendants deny the allegations.

4.     Responding to Paragraph 4 of the First Amended Complaint, Defendants admit that Kretek and Spark agreed to split the profits and losses of their joint development of the Cig2o brand and that the profit/loss split changed from a 50/50 split to a 60/40 split.  The true details of the parties' relationship are otherwise set out in the attached Counterclaims.  Except as so admitted, Kretek denies the remaining allegations of this paragraph.

5.      Responding to Paragraph 5 of the First Amended Complaint, Defendants deny the allegations.

6.     Responding to Paragraph 6 of the First Amended Complaint, Defendants deny the allegations.

7.     Responding to Paragraph 7 of the First Amended Complaint, Defendants deny the allegations.

8.     Responding to Paragraph 8 of the First Amended Complaint, Defendants deny the allegations.

9.     Responding to Paragraph 9 of the First Amended Complaint, Defendants deny the allegations.

10.     Responding to Paragraph 10 of the First Amended Complaint, Defendants deny the allegations.  Furthermore, Kretek affirmatively alleges that Kretek is a joint and equal owner of the good will in the Cig2o brand.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1    11.    Responding to Paragraph 11 of the First Amended Complaint,
2    Defendants deny the allegation that there is any "complete comparison."

3    12.    Responding to Paragraph 12 of the First Amended Complaint,
4    Defendants admit that Kretek advertises its products.  Except as so admitted, Kretek
5    denies the remaining allegations of this paragraph.

6    13.    Responding to Paragraph 13 of the First Amended Complaint,
7    Defendants deny the allegations.

8                                    **PARTIES**

9    14.    Responding to Paragraph 14 of the First Amended Complaint,
10   Defendants deny that Spark is a "limited liability corporation."  Kretek affirmatively
11   alleges that Spark appears to be a limited liability company.  Kretek denies the
12   remaining allegations of this paragraph and affirmatively alleges that it is a joint and
13   equal owner of all goodwill in the Cig2o brand, as set out in more detail in the
14   attached Counterclaims.

15   15.    Responding to Paragraph 15 of the First Amended Complaint,
16   Defendants admit that "Kretek is a company incorporated in California with its
17   principal place of business in Moorpark, California" and admit that "Kretek
18   distributes specialty tobacco products, tobacco accessories and general merchandise
19   to distributors and wholesalers who serve convenience, smokeshop and tobacco
20   discount retailers as well as other tobacco distribution channels."

21   16.    Responding to Paragraph 16 of the First Amended Complaint,
22   Defendants admit that Mark Cassar resides in Ventura County and admit that Mr.
23   Cassar is Kretek's CEO.

24   17.    Responding to Paragraph 17 of the First Amended Complaint,
25   Defendants deny each and every allegation of this paragraph on the basis that they
26   lack sufficient knowledge or information to form a belief about the truth of those
27   allegations.  Defendants deny that they have engaged in any wrongful conduct and
28   deny that Plaintiff has been harmed by any wrongful conduct.

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3RD Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

## JURISDICTION AND VENUE

18.    Responding to Paragraph 18 of the First Amended Complaint, Defendants admit the allegations.  Furthermore, Defendants affirmatively allege that this action arises under federal law such that this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

19.    Responding to Paragraph 19 of the First Amended Complaint, Defendants admit the allegations.  Furthermore, Defendants affirmatively allege that venue is proper in the Western Division of the Central District of California.

## FACTUAL ALLEGATIONS

20.    Responding to Paragraph 20 of the First Amended Complaint, Defendants deny the allegations.  Kretek affirmatively alleges that it is a fifty percent owner of all goodwill in the Cig2o brand, as set out in more detail in the attached Counterclaims.

21.    Responding to Paragraph 21 of the First Amended Complaint, Defendants admit that e-cigarettes do not burn tobacco and instead use a heating element to vaporize a liquid solution.  Except as so admitted, Defendants deny the allegations.  Defendants affirmatively allege that they do not make any representations that e-cigarettes are comparable to pharmacological devices used to quit smoking.  Defendants affirmatively allege that they do not make any representations that "e-cigarettes are non-carcinogenic alternatives to traditional cigarettes."  To be clear, Defendants affirmatively allege that, despite any legal relationship between Kretek and Spark relating to the Cig2o brand, Defendants do not in any way adopt the statements by Spark in Paragraph 21 of the First Amended Complaint.  Kretek affirmatively alleges that Spark's allegations in this paragraph are inconsistent with Spark's legal obligations and should be specifically and expressly withdrawn.

22.    Responding to Paragraph 22 of the First Amended Complaint, Defendants admit that Spark has had a distribution arrangement with Phillips &

King International.  Except as so admitted, Defendants deny the remaining allegations of this paragraph.

23.     Responding to Paragraph 23 of the First Amended Complaint, Defendants deny the allegations.

24.     Responding to Paragraph 24 of the First Amended Complaint, Defendants admit that Kretek is the parent of Phillips & King and admit that Kretek is a "large international distributor of tobacco."  Except as so admitted, Defendants deny the allegations.

25.     Responding to Paragraph 25 of the First Amended Complaint, Defendants deny the allegations.

26.     Responding to Paragraph 26 of the First Amended Complaint, Defendants deny the allegations.

27.     Responding to Paragraph 27 of the First Amended Complaint, Defendants deny the allegations.

28.     Responding to Paragraph 28 of the First Amended Complaint, Defendants admit that Kretek and Spark agreed to split the profits and losses of their joint development of the Cig2o brand and that the profit/loss split changed from a 50/50 split to a 60/40 split.  Except as so admitted, Kretek denies the remaining allegations of this paragraph.

29.     Responding to Paragraph 29 of the First Amended Complaint, Defendants admit that Kretek and Spark agreed to split the profits and losses of their joint development of the Cig2o brand and that the profit/loss split changed from a 50/50 split to a 60/40 split.  Except as so admitted, Kretek denies the remaining allegations of this paragraph.

30.     Responding to Paragraph 30 of the First Amended Complaint, Defendants admit that: Kretek distributes its own e-cigarette brands; that Spark and Spencer Thompson were fully aware of this long before August 2012; and that Spark has long distributed its own e-cigarette brand called Vapage, which competes

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ᴿᴰ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1   with Cig2o.  Except as so admitted, Defendants deny the remaining allegations of

2   this paragraph.

3          31.    Responding to Paragraph 31 of the First Amended Complaint,

4   Defendants admit that Spark and Kretek are joint owners of all goodwill in the

5   Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

6   this paragraph.

7          32.    Responding to Paragraph 32 of the First Amended Complaint,

8   Defendants admit that Spark and Kretek are joint owners of all goodwill in the

9   Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

10  this paragraph.

11         33.    Responding to Paragraph 33 of the First Amended Complaint,

12  Defendants deny the allegations.

13         34.    Responding to Paragraph 34 of the First Amended Complaint,

14  Defendants deny the allegations.

15         35.    Responding to Paragraph 35 of the First Amended Complaint,

16  Defendants deny the allegations.

17         36.    Responding to Paragraph 36 of the First Amended Complaint,

18  Defendants deny the allegations.

19         37.    Responding to Paragraph 37 of the First Amended Complaint,

20  Defendants deny the allegations.

21         38.    Responding to Paragraph 38 of the First Amended Complaint,

22  Defendants deny the allegations.

23         39.    Responding to Paragraph 39 of the First Amended Complaint,

24  Defendants deny the allegations.

25         40.    Responding to Paragraph 40 of the First Amended Complaint,

26  Defendants admit that Cig2o is used by many nationwide and that Spark and Kretek

27  are joint owners of all goodwill in the Cig2o brand.  Except as so admitted,

28  Defendants deny the remaining allegations of this paragraph.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

41.     Responding to Paragraph 41 of the First Amended Complaint, Defendants deny the allegations.  Defendants deny that there are any distinctive trade dress rights in the particular packaging pictured in paragraph 42.  Furthermore, Kretek affirmatively alleges that Kretek is a joint owner of the good will in the Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of this paragraph.

42.     Responding to Paragraph 42 of the First Amended Complaint, Defendants admit that there appear to be pictures of certain Cig2o packaging. Defendants deny that there is any distinctive trade dress rights in the particular packaging pictured in paragraph 42.  Furthermore, Kretek affirmatively alleges that Kretek is a joint owner of the good will in the Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of this paragraph.

43.     Responding to Paragraph 43 of the First Amended Complaint, Defendants deny the allegations.  Defendants deny that there is any distinctive trade dress rights in the particular packaging pictured in paragraph 42.  Furthermore, Kretek affirmatively alleges that Kretek is a joint owner of the good will in the Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of this paragraph.

44.     Responding to Paragraph 44 of the First Amended Complaint, Defendants deny the allegations.  Defendants deny that there is any distinctive trade dress rights in the particular packaging pictured in paragraph 42.  Furthermore, Kretek affirmatively alleges that Kretek is a joint owner of the good will in the Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of this paragraph.

45.     Responding to Paragraph 45 of the First Amended Complaint, Defendants deny the allegations.  Defendants deny that there is any distinctive trade dress rights in the particular packaging pictured in paragraph 42.  Furthermore, Kretek affirmatively alleges that Kretek is a joint owner of the good will in the

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

2  this paragraph.

3       46.    Responding to Paragraph 46 of the First Amended Complaint,

4  Defendants deny the allegations.  Defendants deny that there is any distinctive trade

5  dress rights in the particular packaging pictured in paragraph 42.  Furthermore,

6  Kretek affirmatively alleges that Kretek is a joint owner of the good will in the

7  Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

8  this paragraph.

9       47.    Responding to Paragraph 47 of the First Amended Complaint,

10 Defendants deny the allegations.  Defendants deny that there is any distinctive trade

11 dress rights in the particular packaging pictured in paragraph 42.  Furthermore,

12 Kretek affirmatively alleges that Kretek is a joint owner of the good will in the

13 Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

14 this paragraph.

15      48.    Responding to Paragraph 48 of the First Amended Complaint,

16 Defendants admit that this Paragraph appears to show a picture of certain EZ Cig

17 packaging.  Defendants deny that there is any distinctive trade dress rights in the

18 particular packaging pictured in paragraph 42.  Furthermore, Kretek affirmatively

19 alleges that Kretek is a joint owner of the good will in the Cig2o brand.  Except as

20 so admitted, Defendants deny the remaining allegations of this paragraph.

21      49.    Responding to Paragraph 49 of the First Amended Complaint,

22 Defendants deny the allegations.  Defendants deny that there is any distinctive trade

23 dress rights in the particular packaging pictured in paragraph 42.  Furthermore,

24 Kretek affirmatively alleges that Kretek is a joint owner of the good will in the

25 Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

26 this paragraph.

27      50.    Responding to Paragraph 50 of the First Amended Complaint,

28 Defendants deny the allegations.  Defendants deny that there is any distinctive trade

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   dress rights in the particular packaging pictured in paragraph 42.  Furthermore,

2   Kretek affirmatively alleges that Kretek is a joint owner of the good will in the

3   Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

4   this paragraph.

5       51.      Responding to Paragraph 51 of the First Amended Complaint,

6   Defendants deny the allegations.  Defendants deny that there is any distinctive trade

7   dress rights in the particular packaging pictured in paragraph 42.  Furthermore,

8   Kretek affirmatively alleges that Kretek is a joint owner of the good will in the

9   Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

10  this paragraph.

11      52.      Responding to Paragraph 52 of the First Amended Complaint,

12  Defendants deny the allegations.  Defendants deny that there is any distinctive trade

13  dress rights in the particular packaging pictured in paragraph 42.  Furthermore,

14  Kretek affirmatively alleges that Kretek is a joint owner of the good will in the

15  Cig2o brand.  Except as so admitted, Defendants deny the remaining allegations of

16  this paragraph.

17                **FIRST ALLEGED CLAIM FOR RELIEF**

18                **Breach of Contract against Kretek**

19      53.      Responding to paragraph 53 of the First Amended Complaint,

20  Defendants refer to their respective responses to paragraphs 1 through 52 of

21  Plaintiff's First Amended Complaint and incorporate those responses by reference.

22      54.      Responding to Paragraph 54 of the First Amended Complaint,

23  Defendants admit that Kretek and Spark agreed to split the profits and losses of their

24  joint development of the Cig2o brand and that the profit/loss split changed from a

25  50/50 split to a 60/40 split.  A summary of the actual relationship between Spark and

26  Kretek is set out in the attached Counterclaims.  Except as so admitted, Defendants

27  deny the remaining allegations of this paragraph.

28      55.      Responding to Paragraph 55 of the First Amended Complaint,

Defendants admit that Kretek and Spark agreed to split the profits and losses of their joint development of the Cig2o brand and that the profit/loss split changed from a 50/50 split to a 60/40 split.  A summary of the actual relationship between Spark and Kretek is set out in the attached Counterclaims.  Except as so admitted, Defendants deny the remaining allegations of this paragraph.

56.     Responding to Paragraph 56 of the First Amended Complaint, Defendants deny the allegations.

57.     Responding to Paragraph 57 of the First Amended Complaint, Defendants deny the allegations.

58.     Responding to Paragraph 58 of the First Amended Complaint, Defendants deny the allegations.

## SECOND ALLEGED CLAIM FOR RELIEF

### Fraud against all Defendants

59.     Responding to paragraph 59 of the First Amended Complaint, Defendants refer to their respective responses to paragraphs 1 through 58 of Plaintiff's First Amended Complaint and incorporate those responses by reference.

60.     Responding to paragraph 60 of the First Amended Complaint, Defendants deny the allegations.

61.     Responding to paragraph 61 of the First Amended Complaint, Defendants admit that Spark may have trusted Kretek but otherwise deny the allegations.

62.     Responding to paragraph 62 of the First Amended Complaint, Defendants deny the allegations.

63.     Responding to paragraph 63 of the First Amended Complaint, Defendants deny the allegations.

64.     Responding to paragraph 64 of the First Amended Complaint, Defendants deny the allegations.

65.     Responding to paragraph 65 of the First Amended Complaint,

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1 Defendants deny the allegations.

2 ## THIRD ALLEGED CLAIM FOR RELIEF

3 ### Negligent Misrepresentation against all Defendants

4 66.    Responding to paragraph 66 of the First Amended Complaint,

5 Defendants refer to their respective responses to paragraphs 1 through 65 of

6 Plaintiff's First Amended Complaint and incorporate those responses by reference.

7 67.    Responding to paragraph 67 of the First Amended Complaint,

8 Defendants deny the allegations.

9 68.    Responding to paragraph 68 of the First Amended Complaint,

10 Defendants deny the allegations.

11 69.    Responding to paragraph 69 of the First Amended Complaint,

12 Defendants deny the allegations.

13 70.    Responding to paragraph 70 of the First Amended Complaint,

14 Defendants deny the allegations.

15 71.    Responding to paragraph 71 of the First Amended Complaint,

16 Defendants deny the allegations.

17 ## FOURTH ALLEGED CLAIM FOR RELIEF

18 ### Accounting Against Kretek

19 72.    Responding to paragraph 72 of the First Amended Complaint,

20 Defendants refer to their respective responses to paragraphs 1 through 71 of

21 Plaintiff's First Amended Complaint and incorporate those responses by reference.

22 73.    Responding to Paragraph 73 of the First Amended Complaint,

23 Defendants admit that Kretek and Spark agreed to split the profits and losses of their

24 joint development of the Cig2o brand and that the profit/loss split changed from a

25 50/50 split to a 60/40 split.  A summary of the actual relationship between Spark and

26 Kretek is set out in the attached Counterclaims.  Except as so admitted, Defendants

27 deny the remaining allegations of this paragraph.

28 74.    Responding to Paragraph 74 of the First Amended Complaint,

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Defendants admit that Kretek and Spark agreed to split the profits and losses of their joint development of the Cig2o brand and that the profit/loss split changed from a 50/50 split to a 60/40 split.  A summary of the actual relationship between Spark and Kretek is set out in the attached Counterclaims.  Except as so admitted, Defendants deny the remaining allegations of this paragraph.

75.     Responding to Paragraph 75 of the First Amended Complaint, Defendants admit that Kretek and Spark agreed to split the profits and losses of their joint development of the Cig2o brand and that the profit/loss split changed from a 50/50 split to a 60/40 split.  A summary of the actual relationship between Spark and Kretek is set out in the attached Counterclaims.  Except as so admitted, Defendants deny the remaining allegations of this paragraph.

76.     Responding to paragraph 76 of the First Amended Complaint, Defendants deny the allegations.

## FIFTH ALLEGED CLAIM FOR RELIEF

### Trade Dress Infringement Under 15 U.S.C. § 1125(a)

77.     Responding to paragraph 77 of the First Amended Complaint, Defendants refer to their respective responses to paragraphs 1 through 76 of Plaintiff's First Amended Complaint and incorporate those responses by reference.

78.     Responding to paragraph 78 of the First Amended Complaint, Defendants deny the allegations.

79.     Responding to paragraph 79 of the First Amended Complaint, Defendants deny the allegations.

80.     Responding to paragraph 80 of the First Amended Complaint, Defendants deny the allegations.

81.     Responding to paragraph 81 of the First Amended Complaint, Defendants deny the allegations.

82.     Responding to paragraph 82 of the First Amended Complaint, Defendants deny the allegations.

ANSWER AND COUNTERCLAIMS

83.    Responding to paragraph 83 of the First Amended Complaint, Defendants deny the allegations.

84.    Responding to paragraph 84 of the First Amended Complaint, Defendants deny the allegations.

## SIXTH ALLEGED CLAIM FOR RELIEF

### Unfair Competition Under Cal. Bus. & Prof. Code § 17200

85.    Responding to paragraph 85 of the First Amended Complaint, Defendants refer to their respective responses to paragraphs 1 through 84 of Plaintiff's First Amended Complaint and incorporate those responses by reference.

86.    Responding to paragraph 86 of the First Amended Complaint, Defendants deny the allegations.

87.    Responding to paragraph 87 of the First Amended Complaint, Defendants deny the allegations.

88.    Responding to paragraph 88 of the First Amended Complaint, Defendants deny the allegations.

## SEVENTH ALLEGED CLAIM FOR RELIEF

### Declaratory Relief Against Kretek

89.    Responding to paragraph 89 of the First Amended Complaint, Defendants refer to their respective responses to paragraphs 1 through 88 of Plaintiff's First Amended Complaint and incorporate those responses by reference.

90.    Responding to paragraph 90 of the First Amended Complaint, Defendants deny the allegations.

91.    Responding to paragraph 91 of the First Amended Complaint, Defendants admit that there is an actual controversy between Spark and Kretek regarding Spark's wrongful attempt to deprive Kretek of its rightful 50 percent interest in the "Cig2o" brand and to disavow the partnership the parties formed to co-own the brand and work together in manufacturing, developing, marketing, selling, and distributing Cig2o products.  Except as so admitted, Defendants deny

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

the allegations.

92.     Responding to paragraph 92 of the First Amended Complaint, Defendants admit that a judicial declaration along the lines set out in Kretek's attached Counterclaims is necessary and appropriate.  Except as so admitted, Defendants deny the allegations.

93.     Responding to paragraph 93 of the First Amended Complaint, Defendants admit that Spark seeks such a declaration but deny that Spark is entitled to anything of the sort.

94.     Responding to paragraph 94 of the First Amended Complaint, Defendants admit that they own a 50 percent interest in the "Cig2o" brand and admit that Spark is wrongfully attempting to disavow the partnership the parties formed to co-own the brand and work together in manufacturing, developing, marketing, selling, and distributing Cig2o products.  Except as so admitted, Defendants deny the allegations.

95.     Responding to paragraph 95 of the First Amended Complaint, Defendants admit that there is an actual controversy between Spark and Kretek regarding Spark's wrongful attempt to deprive Kretek of its rightful 50 percent interest in the "Cig2o" brand and to disavow the partnership the parties formed to co-own the brand and work together in manufacturing, developing, marketing, selling, and distributing Cig2o products.  Defendants admit that a judicial declaration affirming Kretek's rights in the Cig2o brand is necessary and appropriate.  Except as so admitted, Defendants deny the allegations.

96.     Responding to paragraph 94 of the First Amended Complaint, Defendants admit that they own a 50 percent interest in the "Cig2o" brand and admit that Spark is wrongfully attempting to disavow the partnership the parties formed to co-own the brand and work together in manufacturing, developing, marketing, selling, and distributing Cig2o products.  Except as so admitted, Defendants deny the allegations.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

**AFFIRMATIVE DEFENSES**

97.     By setting out the following "affirmative defenses," Defendants in no way admit that they have the burden of proof on any such "affirmative defenses."

**FIRST AFFIRMATIVE DEFENSE**

(Waiver)

98.     Spark is precluded from recovering on any of its purported claims for relief by the doctrine of waiver.

**SECOND AFFIRMATIVE DEFENSE**

(Estoppel)

99.     Spark is precluded from recovering on any of its purported claims for relief by the doctrine of estoppel.

**THIRD AFFIRMATIVE DEFENSE**

(Laches)

100.    Spark is precluded from recovering on any of its purported claims for relief by the doctrine of laches.

**FOURTH AFFIRMATIVE DEFENSE**

(Statutes of Limitations)

101.    Spark is precluded from recovering on any of its purported claims for relief, in whole or in part, by the operable statutes of limitations.

**FIFTH AFFIRMATIVE DEFENSE**

(Unclean Hands)

102.    Spark is precluded from recovering on any of its claims for relief by the doctrine of unclean hands.

**SIXTH AFFIRMATIVE DEFENSE**

(No Trade Dress Rights)

103.    The Sixth Claim for Relief fails because there are no alleged trade dress rights in the packaging at issue.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEVENTH AFFIRMATIVE DEFENSE

### (Fair Use)

104.    Spark's Sixth Claim for Relief is barred, in whole or part, because even if Spark had trade dress rights in certain packaging (which it most assuredly does not), Defendants alleged use of that purported trade dress is a fair use, or otherwise constitutes permissible and good faith use other than as trade dress.

## EIGHTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

105.    Spark's Sixth Claim for Relief is barred, in whole or part, because Spark does not have standing to assert claims under section 43(a) of the Lanham Act relating to the Cig2o brand against a co-owner of the Cig2o brand.

## NINTH AFFIRMATIVE DEFENSE

### (Statutory Damages Not Available)

106.    Spark is not entitled to statutory damages under the Lanham Act because all requisite conditions for an award of such damages are not met.

## TENTH AFFIRMATIVE DEFENSE

### (Setoff For Damages)

107.    Spark is precluded from recovering on any of its claims for relief, in whole or in part, because Starz is entitled to a setoff against any damages under, but not limited, to California Code of Civil Procedure section 431.70 and the common law setoff doctrine.

**COUNTERCLAIMS**

For its Counterclaims against Counterdefendants Spark Industries, Inc. and ROES 1-10, Counterclaimant Kretek International, Inc., alleges the following:

**INTRODUCTION**

1.      Contrary to the allegations of Spark's First Amended Complaint, this case has nothing to do with any alleged wrongdoing by Kretek.  Rather, Spark's action was filed for one reason and one reason alone: to force out Spark's partner, Kretek, and to take full control of the valuable Cig2o brand for itself.

2.      In short, this case involves a scheme by which Spark, through a series of improper and fraudulent actions, has sought to deprive Kretek of its rightful 50 percent joint ownership interest in the "Cig2o" brand and to disavow the partnership the parties formed to co-own the brand and work together in manufacturing, marketing, selling, and distributing Cig2o products, and developing goodwill in the Cig2o brand.

**JURISDICTION AND VENUE**

3.      Jurisdiction is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1367 in that the Counterclaims alleged form part of the same case or controversy as Plaintiff's federal claims for relief under Section 43(a) of the Lanham Act (codified at 15 U.S.C. § 1125(a)).

4.      This Court has personal jurisdiction over Counterdefendants because Counterdefendants are domiciled in California and a substantial number of events giving rise to this action occurred in California.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2).

**THE PARTIES**

6.      Counterclaimant Kretek International, Inc. ("Kretek") is a California corporation with its principal place of business in Ventura County, California.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

7.     Counterdefendant Spark Industries, LLC ("Spark" or "Counterdefendant") is a California limited liability company with its principal place of business in Ventura County, California.

8.     Kretek is ignorant of the true names and capacities of Counterdefendants Roes 1 through 10 and therefore sues these Counterdefendants by such fictitious names.  Kretek will amend these Counterclaims to allege these Counterdefendants' names and capacities when ascertained.  On information and belief, each of these Counterdefendants is responsible and liable in some manner for the events alleged herein and damages caused thereby.

## GENERAL ALLEGATIONS

9.     Phillips & King International, Inc. ("Phillips & King") is a leading distributor of specialty tobacco products and electronic cigarettes, and a wholly owned subsidiary of Kretek.  In spring 2010, Spark approached Phillips & King to distribute an electronic cigarette, Cig2o.  In June 2010, Phillips & King began selling and distributing the Cig2o brand.  At or around that time, Spark sold other competing electronic cigarette brands—including a brand called "Vapage."  By 2010, Phillips & King, was also selling electronic cigarette brands other than Cig2o, and it continues to do so to this day.

10.    In 2010, Spark did not have sufficient funding or experience in the industry to develop, manufacture, market, sell, and distribute Cig2o and make it a marquee national electronic cigarette brand.  Kretek, on the other hand, had nearly thirty years' experience in the industry and  had developed strong proprietary trade channels.

11.    Because Spark needed additional funds and expertise to develop, manufacture, market, sell, and distribute the Cig2o brand, Spark and Kretek decided to form a partnership.

12.    On or about July 19, 2010, Spark's president, Spencer Thompson, drafted a handwritten agreement called the "Plan A" agreement whereby Kretek and

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Spark would be partners and share ownership of Cig2o ("Thompson's Handwritten Proposal," attached hereto as Exhibit A). The deal points were: (1) Kretek and Spark share inventory costs; (2) Kretek and Spark split gross sales less discounts and marketing costs approved by both parties; (3) Kretek pays all warehousing, fulfillment, and shipping costs; (4) Spark pays development costs for new products; (5) if the parties sold Cig2o, Kretek and Spark would split the proceeds from the sale equally (50 percent each); and (6) Kretek and Spark share ownership of the brand at a percentage split of 49.9 percent to Kretek and 50.1 percent to Spark.

13.     Nothing in Thompson's Handwritten Proposal precludes Kretek from selling other electronic cigarette brands.

14.     A few days later, Thompson sent Kretek a "Plan B" proposal entitled Exclusive Distribution Agreement. The proposal suggested relatively similar terms to the Plan A agreement, including, again, shared equity in the Cig2o brand. And, like the Plan A agreement, it did not preclude Kretek from distributing other electronic cigarette brands.

15.     In October 2010, Kretek and Spark still had not executed a formal written version of an agreement. Nevertheless, Sean Cassar, Kretek's Chief Operating Officer, drafted a memorandum memorializing the agreement that existed between Kretek and Spark (the "October 2010 Agreement," attached hereto as Exhibit B), under which the parties were already operating. The October 2010 Agreement was sent to Spencer Thompson who accepted its terms expressly and by conduct on behalf of Spark. The October 2010 Agreement provides that: (1) Kretek and Spark share equally in the ownership of the Cig2o brand and trademarks; (2) Spark would only distribute Cig2o through Kretek; (3) purchase of inventory would be shared equally—Kretek would submit purchase orders to Spark with 50 percent payment and Spark would make the remainder 50 percent payment to a Chinese manufacturer; (4) cost of shipping would be shared equally; (5) Kretek would warehouse all Cig2o product and bear the costs of warehousing; (6) Kretek is

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   responsible for distribution of the product, and profits (or losses) would be split

2   equally; (7) marketing of the product would be shared equally; and (8) if the Cig2o

3   brand were ever sold, Kretek and Spark would split the proceeds of the sale equally.

4       16.    The October 2010 Agreement does not prohibit either Kretek or Spark

5   from distributing competing products.  Indeed, at the time Cassar memorialized the

6   parties' agreement in the October 2010 Agreement, Spark sold a competing

7   electronic cigarette product called Vapage, and Phillips & King (Kretek's

8   subsidiary) likewise sold other electronic cigarette products apart from Cig2o.

9       17.    In the Fall of 2010, Kretek and Spark placed their first joint orders of

10   Cig2o.  Kretek opened its expansive proprietary distribution channels to its new

11   Cig2o brand and began marketing, selling, and distributing Cig2o brand products

12   pursuant to terms agreed to between the parties and memorialized in the October

13   2010 Agreement.

14       18.    Beginning in October 2010, Kretek and Spark acted as joint owners of

15   the Cig2o brand pursuant to terms in the October 2010 Agreement.  Together, the

16   parties jointly developed the brand's marketing, sales, and distribution.  The parties

17   also shared in the brand's costs and/or losses.  For example, the parties split freight-

18   in costs, labor costs for creating in-store displays, and legal costs associated with the

19   brand.

20       19.    Kretek and Spark also acted as partners in other ways, beyond profit

21   and cost sharing.  From the moment the parties entered into the agreement to share

22   ownership of Cig2o, Kretek introduced Spark personnel—including Spencer

23   Thompson—to Kretek's proprietary customers.  Kretek invited Spark to join Kretek

24   at tradeshows so the partners could sell Cig2o together.  Kretek also invited Spark to

25   participate in its weekly operational meetings, wherein it discussed company

26   strategy, brand development, and other operational issues.  And Kretek and Spark

27   worked together in designing, manufacturing, packaging, managing, and otherwise

28   developing the goodwill in the brand.

20. In or around January 2011, the parties began attempts to reach a more formal long-form version of their agreement, and began exchanging draft long-form agreements. In some of these new draft agreements, Spark requested that Kretek and Phillips & King agree not to sell competing electronic cigarette products, even though Spark sold competing electronic cigarette products, including its Vapage brand electronic cigarettes. Over the following year, the parties exchanged numerous drafts. Several important points from Thompson's Handwritten Proposal and the October 2010 Agreement always remained the same: (1) shared profits, losses, and costs associated with the Cig2o brand; (2) shared ownership of the Cig2o brand; (3) equally shared proceeds from any potential sale of the Cig2o brand; and (4) an agreement to work together in the management, manufacturing, marketing, distribution, and sale of Cig2o products, and the overall development of the goodwill in the Cig2o brand.

21. By November 2011, the parties still had not executed a formal written agreement, though they continued to operate pursuant to their less formal agreement as memorialized in the October 2010 Agreement. Kretek and Spark recognized, however, that the current equal-profit-split was unfair. Kretek had been carrying *all* of the inventory, paying *all* the associated costs, and carrying *all* the associated risk. In return for agreeing to bear these high costs and the associated risks, the parties agreed that Kretek would receive 60 percent of the profit and Spark would receive 40 percent.

22. The parties continued to exchange drafts of a formalized agreement. In November 2011, Sean Cassar informed Spencer Thompson in no uncertain terms that in any executed written agreement, Kretek would specifically reserve its right to sell its own proprietary brand of electronic cigarettes. Even though Spark sold a competing electronic cigarette brand, Spark objected and continued to insist that the parties change the terms of their relationship such that Kretek would now agree not to sell a propriety electronic cigarette. After several more months of negotiations,

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ʀᴅ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Thompson agreed in an email in March of 2012 that he would allow Kretek to develop and sell its own proprietary electronic cigarette brand.  Nevertheless, the parties still did not execute a formal, long-form agreement.

23.    Sometime in 2012, Spencer Thompson learned that Kretek had developed an electronic cigarette brand called "EZ Cig."  Although he initially complained, his position on the issue continually changed, and the bottom line was that he *never* attempted to end the parties' relationship (until the filing of this action) or to otherwise sever Spark's very lucrative relationship with Kretek.  Accordingly, Kretek and Spark continued to act as partners pursuant to Thompson's Handwritten Proposal and the October 2010 Agreement for over two more years, until Spark filed this action on June 20, 2014.

24.    For example, in or around June 2012, Spark was sued by a company alleging that the Cig2o electronic cigarette products infringed a United States Patent. Because Kretek and Spark shared ownership of the Cig2o brand, Kretek paid half of the attorneys' fees and costs to defend the Cig2o brand in the patent lawsuit.

25.    Similarly, in 2013, a customer requested that Kretek and Spark provide insurance for Cig2o.  Even though the customer did not carry any of Kretek's other electronic cigarette brands at the time, Kretek offered to split the insurance costs as follows: assign 50 percent of the cost to Cig2o (split equally between Kretek and Spark) and 50 percent to Kretek's other proprietary brands (paid by Kretek).  In other words, Spark would only pay 25 percent of the insurance cost and Kretek would pay the rest.  Spark agreed to this, and the insurance costs were split accordingly.

26.    In 2014, Spark faced another lawsuit in connection with the Cig2o brand.  As they had done for the prior lawsuit, Spark and Kretek split the attorneys' fees and costs for defense of the lawsuit and continued to do so until this action was filed.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

27.     It turns out, however, that Spark did not always act in the best interest of the partnership.  For example, in 2013, the electronic cigarette market had moved from disposable electronic cigarettes mini kits, and cartridges to electronic cigarette pens and liquids.  Spark quickly developed, designed, and revitalized its old Vapage brand to conform with the current market and consumer demands.  Spark did not act so quickly with respect to Cig2o products, however.  Instead, Spark continuously delayed plans to reformat the Cig2o brand to include pens and liquids.  In January 2013, Kretek confronted Spencer Thompson about the delay at a trade show.  Thompson admitted that he should have designed pens and liquids for Cig2o months prior, and promised to develop the new Cig2o line soon.  Despite his promises, Thompson continued to delay.  By January 2014—a full year later—Spark still had failed to develop electronic pens and liquids for Cig2o, even though sales of Vapage's electronic pens and liquids were very successful.  As a result, Spark's exclusive Vapage brand had an advantage in the market that the shared Cig2o brand lacked.

28.     At or around that same time, and unbeknownst to Kretek, Spark began engaging in a covert scheme to disavow its partnership with Kretek, deprive Kretek of its 50 percent interest in the Cig2o brand, steal Kretek employees, and interfere in Kretek's customer relationships.

29.     On information and belief, Spencer Thompson informed his sales force that Spark planned to terminate its relationship with Kretek and take back the Cig2o brand.  Kretek is informed that Spark also told its sales force that if it could convince Phillips & King's electronic-cigarette customers—including customers of Kretek's EZ Cig and Voodoo e-Hookah brands—to purchase Spark's Vapage brand instead, Spark would reward the customers with a 5 percent discount.  Furthermore, Kretek understand that when Spark's Vapage customers tried to order Vapage products and Spark did not have them in stock, it would sell Cig2o to those customers without sharing the profits with Kretek.  Kretek believes that Spark also

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1    deceptively inflated the manufacturing cost for Cig2o.  As a result, Kretek is

2    informed that it paid more than half of the Cig2o manufacturing costs, while Spark

3    paid less than its 50 percent share.

4         30.    In addition, Spark began encouraging Kretek's employees to turn over

5    Kretek's proprietary information.  To quell the employees' fears of breaching their

6    duty of loyalty to Kretek and losing their jobs, Spark promised to hire them.

7         31.    Without knowledge of the aforementioned allegations, Kretek

8    continued to act in accordance with the terms of the parties' agreement, as

9    memorialized in the October 2010 Agreement.  Between April 22, 2014 and June

10   18, 2014, Kretek sent Spark approximately 18 purchase orders seeking over a

11   million dollars of Cig2o products.  Kretek paid $284,858 to secure these orders—its

12   share to initiate the order pursuant to the parties' agreement.  Kretek repeatedly

13   asked Spark about the status of the purchase orders as its inventory was running low

14   and Kretek's customers were demanding to know the status of their Cig2o orders.

15        32.    At the same time, Spark's sales force was secretly calling Kretek's

16   customers and telling them that they were taking back the Cig2o brand and that

17   Kretek would no longer be distributing the brand.  Spark's sales team also

18   encouraged the customers to return Cig2o products to Kretek to obtain a refund and

19   purchase new products directly from Spark.

20        33.    Unbeknownst to Kretek, and at the behest of Spark, Kretek's Cig2o

21   brand manager—Jonathan White—began working with Spark in furtherance of its

22   scheme.  Under the guise of concern about the purchase orders, White started

23   gathering information about which customers needed Cig2o products.  White then

24   identified these customers for Spark.  White also kept a close eye on Kretek's

25   inventory, which continuously diminished until Kretek could no longer fill Cig2o

26   orders, let alone enter into agreements for new sales.  Finally, on June 20—with

27   White in possession of the customer information and Kretek's inventory almost

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

ANSWER AND COUNTERCLAIMS

1  entirely depleted—White suddenly resigned, taking Kretek's customer information

2  with him.  Within hours of his resignation, Spark filed its lawsuit against Kretek.

3      34.    A few days later, on June 23, 2014, Kretek again tried to contact Spark

4  and requested that it fill the outstanding purchase orders.  Spark never returned any

5  of Kretek's calls.  Again, on July 10, 2014, weeks after this suit was filed, Kretek

6  attempted to talk about Spark's apparent intent to withdraw from the parties'

7  relationship: Kretek's Chief Financial Officer, Don Gormly, sent Spencer

8  Thompson a letter requesting to meet and resolve these issues.  Neither Thompson,

9  nor anyone at Spark, even had the courtesy to respond.

10      35.    Unlike Spark who engaged in wrongful and underhanded tactics in an

11  attempt to end the parties' long-term, mutually beneficial relationship, Kretek is

12  now seeking to appropriately resolve any issues between the parties out in the open,

13  and in a fair, public, judicial process.

### FIRST COUNTERCLAIM FOR RELIEF

**(Declaratory Relief)**

16      36.    Kretek realleges and incorporates by reference all preceding

17  allegations.

18      37.    Kretek and Spark formed a partnership to co-own the Cig2o brand and

19  to work together in the management, development, manufacturing, marketing, sale,

20  and distribution of Cig2o brand products.  By either or both (a) the parties'

21  agreement governing the partnership and (b) operation of law, Kretek and Spark

22  share equally in ownership of the Cig2o brand (including the mark Cig2o, all

23  goodwill associated with that mark, and all related intellectual property), share

24  profits and losses, and share responsibility for managing, marketing, and developing

25  the brand.

26      38.    On information and belief, Spark disputes the allegations of the

27  foregoing paragraph and contends that no such partnership exists.  Spark claims to

28  be the sole owner of the Cig2o brand (including the Cig2o trademark and any

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  related intellectual property) and claims to be entitled to all profits from Cig2o

2  products and claims to be solely responsible for managing, marketing, and

3  developing the brand.

4       39.     Accordingly, there exists an actual controversy between Kretek and

5  Spark concerning their respective rights and duties relating to the Cig2o brand.

6       40.     Declaratory relief is necessary in order for the parties to ascertain their

7  respective rights, obligations, and duties to one another with respect to the Cig2o

8  brand.

9       41.     Kretek seeks a judicial declaration that (a) Kretek and Spark formed a

10  partnership to co-own the Cig2o brand and to work together in the management,

11  development, manufacturing, marketing, sale, and distribution of Cig2o brand

12  products; (b) Kretek has a 50 percent interest in the Cig2o brand (including all

13  Cig2o marks, goodwill associated with those marks, any registered trademarks

14  incorporating the term "Cig2o", and all related intellectual property) and any other

15  partnership property; and (c) Kretek is entitled to 60 percent of net profits from sales

16  of Cig2o products.

17  **SECOND COUNTERCLAIM FOR RELIEF**

18  **(Conversion)**

19       42.     Kretek realleges and incorporates by reference all preceding

20  allegations.

21       43.     Kretek and Spark are partners and co-owners of the Cig2o brand

22  (including all Cig2o marks, goodwill associated with those marks, any registered

23  trademarks incorporating the term "Cig2o", and all related intellectual property).

24       44.     Spark has repudiated the existence of the partnership between Kretek

25  and Spark and taken exclusive control and possession of the partnership business

26  and assets as alleged above, including without limitation, all goodwill and personal

27  property related to the Cig2o brand.  In doing so, Spark has intentionally and

28

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1 substantially interfered with property owned by Kretek and/or the Cig2o

2 partnership.

3     45.    Kretek did not consent to Spark's actions as alleged above, including

4 without limitation, to Spark's exercise of exclusive control over the Cig2o brand.

5     46.    By either or both (a) the parties' agreement governing the partnership

6 and (b) operation of law, Kretek has a 50 percent interest in the Cig2o brand

7 (including all Cig2o marks, goodwill associated with those marks, any registered

8 trademarks incorporating the term "Cig2o", and all related intellectual property),

9 and Kretek is entitled to receive 60 percent of net profits from Cig2o product sales.

10     47.    As a direct and proximate result of Spark's conversion of the property,

11 Kretek has suffered, and will continue to suffer, damages in an amount to be proven

12 at trial.

13     48.    Because Spark's conduct was willful, malicious, fraudulent, and

14 oppressive, Kretek is entitled to an award of punitive damages in the maximum

15 amount permitted by the California and United States Constitutions.

16 **THIRD COUNTERCLAIM FOR RELIEF**

17 **(Breach of Fiduciary Duties)**

18     49.    Kretek realleges and incorporates by reference all preceding

19 allegations.

20     50.    As Kretek's partner, Spark owed Kretek fiduciary duties, including a

21 duty of loyalty and a duty of due care.

22     51.    Spark, through its agents and representatives, breached its fiduciary

23 duties to Kretek as described above, including without limitation, (a) by disavowing

24 its partnership with Kretek and taking exclusive ownership of the jointly built Cig2o

25 brand for itself; (b) by contacting Cig2o customers and making misrepresentations

26 about the Cig2o brand and about Kretek; (c) by interfering with Kretek's

27 relationships with its customers and employees; (d) by obtaining information from

28 Kretek employees for the purpose of undermining the partnership's objectives and

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  furthering Spark's own objectives; (e) by refusing to fill purchase orders for the

2  purpose of preventing Kretek from filling orders from Cig2o customers and

3  undermining Kretek's business relationships and goodwill; and (f) by purposefully

4  delaying the reformatting of the Cig2o brand, thereby giving Spark's proprietary

5  Vapage brand a market advantage.

6      52.    As a direct and proximate result of Spark's breaches of its fiduciary

7  duties, Kretek has suffered, and will continue to suffer, damages in an amount to be

8  proven at trial.

9      53.    Because Spark's conduct was willful, malicious, fraudulent, and

10  oppressive, Kretek is entitled to an award of punitive damages in the maximum

11  amount permitted by the California and United States Constitutions.

12  **FOURTH COUNTERCLAIM FOR RELIEF**

13  **(Dissolution of Partnership)**

14      54.    Kretek realleges and incorporates by reference all preceding

15  allegations.

16      55.    Kretek seeks a decree of dissolution and winding-up of the Cig2o

17  partnership.  Kretek and Spark are the only two partners and each owns a 50 percent

18  interest in Cig2o.  As alleged above, Spark has repudiated the partnership, converted

19  the partnership assets to its exclusive benefit, and otherwise engaged in improper

20  conduct in violation of its fiduciary duties.  As a result, it is not reasonably

21  practicable for Kretek and Spark to carry on the partnership business, and Kretek is

22  entitled to a judicial decree of dissolution of the partnership.

23  **FIFTH COUNTERCLAIM FOR RELIEF**

24  **(Accounting)**

25      56.    Kretek realleges and incorporates by reference all preceding

26  allegations.

27      57.    Spark has repudiated the partnership and taken exclusive control of the

28  Cig2o brand.  As such, Spark has refused, and continues to refuse, to account to

1  Kretek concerning the allocation of partnership profits, liabilities, and assets.  An

2  accounting is necessary to determine the profits, liabilities, and assets of the Cig2o

3  partnership so the Court can render a final decree of dissolution.  Kretek therefore

4  seeks an accounting performed under the Court's supervision.

### SIXTH COUNTERCLAIM FOR RELIEF

#### (Breach of Contract)

7  58.    Kretek realleges and incorporates by reference the allegations

8  contained in Paragraphs 1 through 35, inclusive.

9  59.    Kretek and Spark entered into a contract for co-ownership of the Cig2o

10  brand.  The terms of the contract were memorialized in the October 2010

11  Agreement, attached hereto as Exhibit B.

12  60.    Alternatively, Kretek and Spark entered into an implied-in-fact contract

13  for co-ownership of the Cig2o brand as manifested by their conduct in working

14  together to manage, develop, market, sell, and distribute the Cig2o brand pursuant to

15  terms of the October 2010 Agreement.

16  61.    Kretek has at all times performed all its obligations under the contract,

17  except as excused, waived, or made impossible by Spark.

18  62.    Spark has materially breached, and continues to breach, the Cig2o

19  contract as alleged above, including without limitation, (a) by misappropriating the

20  co-owned Cig2o brand for Spark's exclusive benefit, (b) by failing to fill Kretek's

21  purchase orders for Cig2o products, (c) by selling Cig2o products without sharing

22  the profits with Kretek, and (d) by refusing to work with Kretek in the management,

23  development, marketing, sale, and distribution of the Cig2o brand.

24  63.    As a direct and proximate result of Spark's breaches as detailed herein,

25  Kretek has suffered, and will continue to suffer, damages in an amount to be proven

26  at trial.

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## SEVENTH COUNTERCLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

64.     Kretek realleges and incorporates by reference the allegations contained in Paragraphs 1 through 35, inclusive, and 58 through 63, inclusive.

65.     Kretek and Spark entered into a valid and enforceable contract for co-ownership of the Cig2o brand.

66.     Implicit in the contract between Kretek and Spark is the covenant that Spark would take no action that would have the purpose or effect of depriving Kretek of its rights and benefits under the contract.  The implied covenant of good faith and fair dealing required Spark to act reasonably and in good faith in its dealings with Kretek and to take such actions as were necessary to protect Kretek's enjoyment of its rights under the agreement.

67.     Kretek has at all times performed all its obligations under the contract, except as excused, waived, or made impossible by Spark.

68.     Spark has materially breached, and continues to breach, the implied covenant of good faith and fair dealing in the parties' contract by, among other things, misappropriating the co-owned Cig2o brand for Spark's exclusive benefit, interfering in Kretek's relationships with its customers and employees, and refusing to work with Kretek in the management, development, marketing, sale, and distribution of the Cig2o brand.  This conduct unfairly interfered with Kretek's right to receive benefits it is entitled to under the contract.

69.     As a direct and proximate result of Spark's actions as detailed herein, Kretek has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Kretek prays for judgment to be entered in its favor and against Spark as follows:

1.    For judgment on Spark's First Amended Complaint that Spark take nothing on any of its claims for relief and that all such claims for relief be dismissed with prejudice;

2.    For a finding that this is an "exceptional case" under 15 U.S.C. § 1117(a)(3) such that Kretek is entitled to its attorneys' fees in defense of the First Amended Complaint;

3.    For compensatory damages on Kretek's Counterclaims in an amount to be proven at trial;

4.    For punitive and exemplary damages in an amount to be determined at trial;

5.    For a judicial declaration that:

    a.    Kretek and Spark formed a partnership to co-own the Cig2o brand;

    b.    Kretek has a 50 percent interest in the Cig2o brand (including all Cig2o trademarks, service marks, trade dress and the like, and any related intellectual property) and any other partnership property; and

    c.    Kretek is entitled to 60 percent of net profits from sales of Cig2o products.

6.    For a judicial decree of dissolution and winding up of the Cig2o partnership between Kretek and Spark;

7.    For an accounting of the Cig2o partnership under Court supervision;

8.    For pre-judgment and post-judgment interest at the maximum rate allowable by law;

9.    For reasonable attorneys' fees allowable by law;

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    10.    For costs of suit; and

2    11.    For such other and further relief as the Court may deem just and proper.

3

4    DATED: July 23, 2014                Respectfully Submitted:

5
                                          KINSELLA WEITZMAN ISER
6                                         KUMP & ALDISERT LLP

7

8
                                          By:  _____/s/_____
9
                                               Michael J. Kump
10                                             Attorneys for Defendant and
                                               Counterclaimant Kretek International, Inc.
11                                             and Defendant Mark Cassar

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1

### **DEMAND FOR JURY TRIAL**

2    Defendant and Counterclaimant Kretek International, Inc., and Defendant

3 Mark Cassar hereby demand trial by jury on all issues so triable in this case,

4 including on all such issues and claims alleged in Plaintiff/Counterdefendant Spark

5 Industries' First Amended Complaint and in the Counterclaims of Kretek

6 International, Inc.

7

8 DATED: July 23, 2014    Respectfully Submitted:

9

10             KINSELLA WEITZMAN ISER
                KUMP & ALDISERT LLP

11

12

13

            By:   /s/          

14              Michael J. Kump

15              Attorneys for Defendant and

16              Counterclaimant Kretek International, Inc.
               and Defendant Mark Cassar

17

18

19

20

21

22

23

24

25

26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**<u>EXHIBIT A</u>**

| **From:** | Spencer Thompson <spencer@sparkind.com> |
| **Sent:** | Monday, July 19, 2010 3:24 PM |
| **To:** | Darren Thibodeau |
| **Cc:** | Brian S |
| **Subject:** | Deal notes |
| **Attachments:** | Kretek Deal Notes.pdf |

Darren,

Thanks for the time this morning, I appreciate it. Here's the scan of the "Plan A" notes....."Plan B" notes are in my head.

I'll be working on the deal-point draft today.

Best Regards,
Spencer



WE *SPARK* INDUSTRIES

**SPENCER THOMPSON**
spencer@sparkind.com

**SPARK** INDUSTRIES, LLC
2363 TELLER RD. SUITE 104
NEWBURY PARK, CA 91320

**TEL** / 805-499-7003 ext.101
**CEL** / 805-558-3050
**FAX** / 805-499-7192
www.sparkindustries.net
www.zeronineracing.com
www.microtempusa.com
www.cig2o.com
www.fuchsracing.com
www.fuchs.conceptdesignrealisations.com

This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to which they are addressed. If you have received this in error, you must not use or disseminate any information contained in it. Please send it back to the person who sent it to you and delete it from your system.

IPCPR SHOW
AUG. 9-13

# KRETEK

○ WEBSITE

- ORIGINALLY ONLY INFORMATIONAL
- WHEN INITIAL ORDER WAS CUT DOWN BY ½, WE HAD NO CHOICE BUT TO DEVELOP AN E-COMMERCE SITE TO SELL THE ADD'L INVENTORY
- WEBSITE IS ON TRACK TO DO $250K/YR, RIGHT NOW IT'S AT $10K/MO
- SO IT'S NOW "WORTH" OVER $120K (1x ANNUAL SALES) IF KRETEK WANTS IN, NEEDS TO PAY $60K + 120K
- OR, JUST LEAVE IT TO SPARK

*MARK SAID w/ THIS IS A TEST, WE'D NEVER ORDER THIS MUCH FOR A TEST!!*

○ DEAL

- KRETEK & SPARK SHARE INVENTORY AQUISITION COSTS   *INCLUDING IMPORTING COST*
- KRETEK & SPARK SPLIT GROSS SALES LESS DISCOUNTS
- SALES COMMISSION PAID BY KRETEK; DOES NOT REDUCE NET SALES ALL WAREHOUSING, FULFILLMENT & SHIPPING COSTS PAID BY KRETEK
- SPARK WILL PAY DEVELOPMENT COSTS ON NEW PRODUCT
- MARKETING COSTS APPROVED BY BOTH COMPANIES & SPLIT 50/50 EXCEPT 8 KRETEK-OWNED MKTG: TRADESHOW, MAGAZINE, P&K FLYER, P&K CATALOG
- SPARK WILL BE PAID WEEKLY, THE FOLLOWING TUESDAY AFTER EACH M-SU WEEK. SALES REPORTS SUBMITTED WITH EACH CHECK
- IF WE CAN'T MATCH COSTS OF INVENTORY,

*ADS, IN-STORE BROCHURES/ FLYERS DISPLAY RACKS*

# KRETEK

- **OWNERSHIP**
  - KRETEK & SPARK WILL OWN 49.9/50.1% OF CIG20
  - IF CIG20 IS SOLD, SPK/KTK WILL SPLIT AMOUNT OF PRODUCT SOLD 50%/50%
  - GOOD WILL (AMOUNT PAID BY BUYER OVER & ABOVE INVENTORY AQUISITION COST) WILL ALSO BE SPLIT 50/50, AFTER ALL OUTSIDE COST-OF-SALE EXPENSES ARE ACCOUNTED FOR (LEGAL, ACCT, ETC.)
  - CAPITAL GAIN/INCOME TAXES PAID SEPARATELY BY EACH PARTY.

- **PRODUCT DEVELOPMENT STATUS**
  - THE PRODUCTS MARK WANTED US TO DEVELOP ARE SPECIFICALLY FOR CONVENIENCE — WHICH WE HALE NO ACCESS TO WITHOUT KRETEK —
  - SO, WE HAVE DELAYED DEVELOPMENT OF THESE ITEMS BECAUSE WE DON'T HAVE A DEAL YET, AND WITHOUT A DEAL, WE MIGHT BE STUCK WITH THE DEVELOPMENT COSTS AND POTENTIALLY INVENTORY COSTS WITH NO ABILITY TO SELL THEM. — NOT TO MENTION, ALL THE OPPORTUNITY COST, TIME & EFFORT WASTED

TRADESHOW / IPCPR & NACS / BANNER, POSTER SHIRTS...?

• JASMIN TO WORK ON ALL CONVENIENCE ITEMS
 — MIN - PACK
 — CHARGERS               } VAN NUYS PACKAGING GUYS
 — CART 3-PACKS

→ COUNTER TOP DISPLAYS TO JASMIN / WENDY
ALSO, BOX MFGR IN L.A. ( NATIONAL BOX )

15 - 18"

$32 \times 10 = 320 = 6240$
$9 \times 3 = 27 \times 2 = 54 = 2160$

## **EXHIBIT B**

**Agreement Notes Between Kretek International and Sparks Industries**

This document will encompass the details about the brand Cig2o and the mutual agreement between Kretek International (KI) and Sparks Industries (SI).

1.  The brand, known as Cig2o, and any related intellectual property, will be co-owned 50 percent by SI and 50 percent by KI.  Whatever official transfer of trademark by SI that is necessary to reflect this change must be completed.
2.  KI will be the sole exclusive distributor for Cig2o worldwide.
3.  All inventory purchased from the factory will be purchased 50/50 by both companies with whatever terms that apply.  (Current terms are 100% up front. We will work towards better terms in the future.)
4.  KI will issue a purchase order to SI for product along with 50% payment, and SI will in turn issue a purchase order to the factory in China, with 100% of payment.
5.  SI will be responsible for ensuring delivery of product to KI warehouse, including arranging inland freight and dealing with customs. All product importation costs (ie. Shipping costs, customs costs, duty, overseas insurance policy in case product does not show up, or is in bad condition for whatever reason) will be initially paid for by SI, then 50% of these costs will be reimbursed to SI by KI.  All of these costs will be split 50/50 by both companies.
6.  All inventory and POS materials will be warehoused at KI.
7.  Once inventory is received into KI warehouse in good saleable condition, KI will have 21 day terms to pay SI their initial 50% of product cost paid by SI, plus 50% of all importation costs that were accrued or paid.
8.  KI will be responsible for selling the product through both KI and Phillips and King (P&K).  Net Profits will be split 50/50 with both companies (see financial notes below defining Net Profits).
9.  Payment to SI:  50% of net profits will be distributed to SI on or before the 15th of each month (for the previous month sales). Funds will be electronically transferred into an established SI bank account. All reports will be presented to SI to justify net sales.
10. A marketing budget will be established 50/50 between the two companies, and agreed upon.  This budget will be reviewed on a quarterly basis, and all expenses that come out of this budget will be agreed upon by both companies. The marketing budget will be responsible for any trade shows, trade marketing, POS material (including selling displays), selling spiffs, events,

sampling, etc. to be agreed upon by both companies.  Specific tradeshows (To be determined) will be part of the marketing budget, therefore the costs will be shared 50/50 by both parties.  (e.g. NACS- If KI takes 8 booths, and 2 of the booths are specifically for Cig2o, then 25% of the booth costs will be shared by both parties.)

11.     In-house advertising- Kretek will be fully responsible for P&K flyer and company catalog insertion costs, and any email or fax blast advertising.

12.     Tradeshows-  KI will include Cig2o in all tradeshow efforts at applicable shows that KI currently attends in conjunction with other products that KI sells.  Any Cig2o specific shows or marketing sampling events that are done on behalf of solely Cig2o will be part of the marketing budget and agreed upon by both companies.

13.     If product becomes illegal:  If for some reason, electronic cigarettes become illegal or are forbidden for sale, both companies will be responsible 50/50 for any inventory or POS remaining, or returns (if necessary) from customers.

14.     Travel Expenses: SI will pay for all development and sourcing related traveling expenses, as well as travel for tradeshows or sales presentations that SI attends.  KI will pay for all travel expenses for KI employees for tradeshows or sales presentations.

15.     SI and KI will split 50/50 any tooling necessary for future new products.

16.     Website- SI will turn the e-commerce website into an information only consumer website.  SI will be responsible for maintaining the official Cig2o website.  KI distributor information will be placed on the website for retailers contact.

17.     If Cig2o Brand is sold; KI and SI will negotiate the deal together, and will split the net profit from the sale 50/50.  If either KI or SI is interested in selling their 50 percent share of Cig2o, they will give the other first right of refusal.

Financial Notes: Definition of Net Profit.

| | |
|---|---|
| **Gross Sales** | 0.00 |
| -less returns | (0.00) |
| -less discount or price promotion | (0.00) |
| -less terms Discount | (0.00) |
| | |
| **Net Sales** | <u>0.00</u> |
| | |
| **COGS** (landed in KI warehouse) | (0.00) |
| | |
| **Gross Profit** | <u>**0.00**</u> |

**<u>Direct Expenses</u>**

| | |
|---|---|
| Commission to Sales Rep (4%) | (0.00) |
| Sales Spiffs (internal or external billbacks) - actual | (0.00) |
| Shipping & Handling (2.5%) | (0.00) |
| Rebate Programs for Big Chains or | |
| Distributors (if applicable) - actual | (0.00) |
| Marketing Budget – actual | (0.00) |
| Destruction of product cost (if applicable) - actual | (0.00) |
| Samples – Tradeshow and Customer- actual | (0.00) |
| | |
| **Net Profit** | <u>**0.00**</u> |

**<u>Split Net Profit 50/50 Between KI and SI.</u>**